HENRY A. GIVEN *et als.* Respondents, *v.* JOHN B. S. LEMOINE Appellant.

*Agency—Factor.*—Where a correspondent ships goods to his factor to be sold upon commission, and puts no limitation upon the price, the factor may, in the exercise of a sound discretion, sell the goods; and the shipper will be responsible to him for the loss upon the sale.

*Appeal from the St. Louis Court of Common Pleas.*

The facts are fully stated in the opinion of the court.

Instructions asked by appellant:

1. If Given in the month of June, 1857, and before any shipment of tobacco was made by defendant, was informed by defendant and had knowledge of the cost of the first shipment of twenty-six hosgheads of tobacco; and being so informed and having such knowledge, told defendant if he would ship the lot of twenty-six hogsheads to plaintiffs, they (plaintiffs) would sell the same as factors for a handsome profit; and that defendant, relying on this promise, made the shipment to plaintiffs at New Orleans; then, in such case, plaintiffs were not authorized to sell said tobacco at a loss on the St. Louis cost.

2. Although plaintiffs may have had no instructions as to time of sale or price, yet if they could have sold the tobacco in the months of July, August and September, at a profit and to advantage, and neglected to do so, and withheld defendant's tobacco from sale until in December, when the same had greatly declined in the market, and then sold it at a great loss, they must answer to defendant for such loss.

3. That the plaintiffs, as factors, were bound, while having charge of defendant's tobacco, to keep him informed of facts material to his interests; and if, while plaintiffs so held defendant's tobacco in the months of September, October, November and December, the tobacco all that time was declining in price, and plaintiffs knew it was so declining, and failed and neglected to inform defendant thereof; and then without notice to defendant, and without demanding a payment of advances made by plaintiffs in the months of December, February and March, sold the tobacco at great loss and sacrifice, in such case plaintiffs are bound to make good to defendant such loss.

4. That plaintiffs, as factors, were bound to keep the tobacco of defendant unmixed with tobacco belonging to themselves or others.

5. That plaintiffs, as factors, had no right to mix defendant's tobacco with that of themselves or others, and then so mixed in a lot or lots, composed of different grades, quali-

ties and values, to sell the whole thus mixed at a round or average price per pound.

6. That if defendant's tobacco, in the months of July, August and September, could have been sold by plaintiffs at a profit to defendant, and plaintiffs knew this fact, and so informed defendant from time to time during said time, and without informing defendant of any decline in the market, and without informing defendant as to the then state of the market, and without any demands of payment of advances made defendant, and without notice to defendant, in the month of December, 1857, sold fifty-one hogsheads of defendant's tobacco at a great sacrifice and loss; in such case plaintiffs are answerable for such loss.

7. To constitute in this case instructions to sell, there need not be an order or command; the expression of a wish or preference is sufficient, and defendant's letters of the 14th July, 12th and 18th September, 1857, amounted to such instruction; and if plaintiffs could have made a sale or sales, on receiving these letters, and failed and neglected to do so, then they are bound for the loss occasioned by such failure and neglect.

8. That if defendant, at the time or after the shipments to plaintiffs, was informed by plaintiffs that defendant's tobacco could be sold in the New Orleans market for a profit on St. Louis costs, and that plaintiffs from time to time, by letters, gave to defendant the same impressions and information through the months of July, August, September and October, and until the 14th December, or about that time, when, without notice and without previous demand for advances, they (the plaintiffs) sold defendant's tobacco at a great sacrifice and loss, they are liable to defendant for such loss.

9. If, prior to shipments of tobacco by defendant to plaintiffs, the plaintiffs or any of them gave the defendant assurance, that if said tobacco should be shipped to them they could sell it for profit; and if, from the time of such shipments up to the 7th of October, 1857, the plaintiffs continued to hold out in their letters to defendant the prospect of a profit,

either by direct assurance to that effect, or by failing in such letters to inform defendant of an unfavorable change in the New Orleans market; and if, from the said 7th of October, to the 14th of December, 1857, the prices of tobacco in that market were steadily declining, and the plaintiffs did not between those dates give the defendant information of such decline, so as to give defendant the opportunity to refund the advances made, and expenses incurred by plaintiffs in connection with the said tobacco, then the plaintiffs are bound to make good to the defendant any loss sustained by the defendant in the sale of said tobacco.

Which instructions the court refused, and defendant excepted.

*Drake* and *Wood*, for appellant.

Appellant insists that although the respondents, as factors, were not limited by instruction to a specified price for the tobacco on sale, yet there is nothing in the evidence to show that the appellant conferred on respondents a discretion to sell below cost. To induce the shipment, respondents assured appellant that they could and would sell his tobacco at a profit. All the correspondence on the part of respondents represents the market price at New Orleans as affording a profit, and nothing had been communicated by respondents to appellant to make it necessary for him to determine whether he would permit his tobacco to be sold at a loss.

Appellant's instructions, as given in his letter of the 14th July, 1857, are substantially instructions not to sell below cost. If a fair profit over cost and expenses could be made on sale, his instruction was to make quick sale; and they (respondents) were in that letter instructed in these words: "You have all the information you require to know, what I can afford to sell at." That information, the evidence shows, was full information as to the costs and expenses of the tobacco.

The instruction given in appellant's letter of the 18th Sep-

tember does not change or modify previous instructions. This letter was written on the assumption that the state of the tobacco market in New Orleans was truly represented by respondents, in person, by their letters and prices current, all showing prices much above cost and expenses, and was intended to hasten, to command a sale at these prices.

There is nothing in all the evidence even tending to show that appellant ever said or wrote a word, from which his consent to sell his tobacco under cost can be inferred; nor that there was ever an intimation given by Given, Watts & Co., that the market in New Orleans was below St. Louis prices, or that they would have to sell below cost. Of such a result there is no evidence that Lemoine had a suspicion, until, after more than two months' silence by Given, Watts & Co., they surprised him by their letter of the 14th December, reporting a most disastrous sale.

If this view and construction of the facts be correct, or, whether correct or not, in any view of the facts, it is evident that both parties contemplated and intended a sale at a profit, and not at a sacrifice. In such case, when, by reason of a great and rapid decline of the market, the great expectations of both parties had been defeated, respondents were bound, before selling at a great sacrifice, to give Lemoine notice and information, and to demand repayment of advances made; and having failed to do so, they are liable for damages arising therefrom. (1 Story on Con. §§ 354 & 357, and note; Parker v. Brancker, 22 Pick. 46; 12 N. Hamp. 239.)

Instructions as to this point were asked by defendant and refused by the court; and there is nothing in the instructions as given by the court, to the same effect or even equivalent.

The first instruction asked by defendant below asserts the law and was warranted by the facts of the case.

The second and sixth instructions were proper, and ought to have been given. (Evans v. Potter, 2 Gall. 13; 1 Sto. Con. 405, n. 3 to § 354.)

The third was proper, and demanded by the facts of the case.

The fourth and fifth instructions of defendant were properly asked and ought to have been given, and the instruction of the court as to the points in these instructions is contrary to the law. (1 Sto. Con. § 360, a.; Clark v. Tipping, 9 Beavan, 284, 291 & 292.)

The seventh instruction was proper. (1 Sto. Con. § 359.) The eighth and ninth instructions ought to have been given as asked. (Authorities cited above.)

The instructions given by the court, on its own motion, while sound and good law in some respects, do not cover or embrace all points properly asked by defendant, and were calculated to mislead the jury.

*Glover & Shepley*, for respondent.

BATES, Judge, delivered the opinion of the court.

The plaintiffs were tobacco factors in New Orleans, and the defendant was a tobacco merchant in St. Louis. The petition states that the defendant shipped to the plaintiffs eighty-two hogsheads of tobacco, to be sold for him on commission, and upon which they advanced the defendant a large sum; and that they sold the tobacco for a sum less than their advances, and asked judgment for the difference between the amount of their advances and charges, and the amount received from the sale of the tobacco. The answer stated, that, before any of the tobacco was shipped, one of the plaintiffs (who are partners) proposed to and requested defendant to ship to plaintiffs twenty-six hogsheads of tobacco, which the defendant then had (samples of which and the cost prices of which the plaintiff had seen), and stated a good profit could be made on said tobacco, and undertook and promised defendant, that, if he would ship said tobacco to plaintiffs, plaintiffs would make sale of the same at a good profit; and defendant agreed to ship said tobacco on those terms, and distinctly told the plaintiff that he would not ship,

said tobacco to plaintiffs to be sold at a loss to the defendant; and that he did ship the twenty-six hogsheads to plaintiffs, and received from them advances on it to an amount of some seven hundred dollars less than its cost.

The answer further states, that afterwards, being induced by encouraging letters from the plaintiffs, he made other shipments to the plaintiffs—the whole amounting to eighty-two hogsheads, and received advances on them for less than their cost; that as to the shipments subsequent to the first no specific instructions were given, but that he intended and the plaintiffs received them as upon the same terms as the first.

The answer further states, that after the plaintiffs received the tobacco in New Orleans, it could have been sold at a profit, but that the plaintiffs, in breach of their undertaking, withheld it from sale until its value had greatly declined, and then sold it at a great sacrifice and loss; and that the plaintiffs made the sales without demanding re-payment of the advances, or informing defendant of the true state of the market; that it was sold in lots with other tobacco not belonging to the defendant, and of inferior quality, at average prices for the lots, and was thus sold at prices greatly below its true value, by all which the defendant was greatly damaged, for which he asked judgment against the plaintiffs.

The plaintiffs replied to the answer, making some issues and denying liability to the defendant for the losses.

The case was tried before the court without a jury. At the trial, it was testified by a witness (Jenkins) that Given, one of the plaintiffs, called at defendant's business house in St. Louis, and examined samples of the twenty-six hogsheads, and told defendant that he would make money by shipping them to New Orleans; the witness did not recollect the exact words of Given; he said that if defendant would ship the tobacco, he would make him a handsome profit on it, or that the defendant would realize a handsome profit. Another witness (Johnson) testified that Given said, that if defendant would ship the tobacco to plaintiffs at New Orleans, it would sell for a handsome profit.

Correspondence by letters between the parties was also given in evidence. The first letter from the defendant to the plaintiffs was as follows: "Having had the pleasure of forming the acquaintance of your Mr. Given, and after an interview with him, during which he gave me some information as to the state of your tobacco market, I have concluded to make you a trial shipment of some twenty-six hogsheads of tobacco, for which I herewith hand you bill of lading, per steamer L. M. Kennett, and also enclose you invoice of same amounting to $4,670.77. By Mr. Given's authority, I will value upon you, under date of to-morrow, for $4,000, at 90 days' date, on account of this shipment, which please honor. Please say to my old friend Mr. Bryan (whom Mr. Given tells me is your tobacco salesman), and on whose account I make this trial of your house, that I want him to sample this lot of tobacco on arrival, and promptly report upon it. There are but four hogsheads of lugs in the lot, three of these almost second leaf; twelve hogsheads of as fine leaf as have been sampled here this season; and the other ten hogsheads from fair to good leaf, all good useful descriptions of tobacco. Ask him to try his hand upon them, and if he can realize a good profit by closing the lot promptly, do so; discount my draft and send me account sales and account current; if not, hold till your judgment dictates a sale. Please let me know what the prospects are for the French Government entering your market, and the Spanish and German also. If this shipment will pay, I will follow it promptly with another and a larger one; and should anything occur calculated to advance your market rates for tobacco, please telegraph me promptly at my expense; don't fail to do this."

This letter was written on July 2, 1857. On the 14th of July, the defendant wrote to the plaintiffs another letter, which enclosed a bill of lading of a shipment of eighteen hogsheads of tobacco. This letter contained these words: "As with the first shipment, please open and report upon this; and whilst I wish you to exercise your best judgment in dis-

posing of it, still, if it will command a fair profit over cost and expenses, I would prefer a quick sale."

On the 6th August, the defendant wrote to the plaintiffs another letter, which enclosed a bill of lading of another shipment, and which contained these words: "I leave the disposal of my tobacco to your good judgment, as I have said before, feeling assured that you will promote my interest to the utmost extent."

In a letter of defendant to plaintiffs of August 25th, he says: "I hope that you will have an opportunity of closing out my shipments at a 'handsome profit.'"

In one of September 12th, after speaking of a large order for the purchase of tobacco in New Orleans, he says: "I hope your judgment will dictate your selling my lots under the excitement consequent upon the execution of this order, and that you will be able to sell the entire lot at a very handsome profit." On the 18th of September, he wrote: "I trust you have embraced the opportunity offered by the purchases for the French and other markets noticed in your letter, to close out all the tobacco I have shipped you. Indeed, I do not want to hold, and would decidedly prefer quick sales."

There was nothing in the letters of the plaintiffs to the defendant to indicate that they held the tobacco under any limitation as to the price at which it should be sold, or under any special agreement whatever. There was evidence that defendant received the New Orleans price current regularly.

There was evidence that the plaintiffs sold some of the defendant's tobacco in lots, with tobacco of other persons of different qualities, at an average price; and there was also evidence that it was the custom in New Orleans to sell in that way, and that the salesman then graded the prices of the different hogsheads composing the lot, according to their relative values, and apportioned to each hogshead its relative proportion of the whole sum received for the lot, and that it was so done with this tobacco.

The court, on its own motion, gave instructions as follows:

"The legal effect of the correspondence in evidence was

Given et als. v. Lemoine.

to confer on the plaintiffs an authority to sell the tobacco in question whenever they, on the exercise of a sound discretion, should think it advantageous to the defendant to do so; and during the time the plaintiffs held the tobacco prior to its sale, they were bonnd to keep the defendant advised of the state of the New Orleans market. If, therefore, the plaintiffs exercised their discretion in good faith in the sale of the tobacco, and did keep the defendant advised of the state of the New Orleans market so far as it was material to or affected the interests of the defendant, that plaintiffs are not liable for any loss which accrued in the sale of the said tobacco, or in consequence of not selling it at an earlier period. The plaintiffs had a right to sell the defendant's tobacco with tobacco belonging to others, although such other tobacco was inferior in quality to the defendant's; but in such case it devolves on the plaintiffs to show that they got and credited the defendant with the full value of his tobacco."

Several instructions asked by the defendant were refused. There was judgment for the plaintiffs, and the defendant appealed. The main defence relied upon in this court, as well as the court below, is that the plaintiffs were limited in the amount for which they should sell the tobacco to a sum which should yield the defendant a profit upon its cost.

If it had been true that the parties made a contract to that effect, or if the defendant had ordered the plaintiffs not to sell under that amount, and the plaintiffs had assented to the orders, the plaintiffs, notwithstanding that they had made advances upon the tobacco, would not have been at liberty to sell it at a price below that limited (except in a few peculiar cases) except after due notice and reasonable demand for the repayment of the advances. In this case, however, there was no evidence of such a contract; for, taking the statements of the plaintiff Given, made to the defendant at St. Louis, before the shipment of the tobacco, most strongly against the plaintiffs, as a proposition such as the defendant contends it was, yet the proposition was not at that time ac-

cepted by the defendant (there is no evidence at all of such acceptance), nor can the subsequent shipment of the tobacco be construed to be an acceptance of such proposition, because the letter which accompanied the shipment, in referring to the interview with Given, speaks only of information obtained from him of the state of the New Orleans market, upon which the defendant made that trial shipment, and says that if it will pay, he will follow it with others. Nor is there any evidence that defendant had ordered the plaintiffs not to sell under any sum or price. The instruction given correctly expressed the legal effect of the correspondence in respect to this question.

The instructions asked by the defendant and refused, presented his view of the same questions passed upon by the court in the instructions given by the court, and there was no error in the refusal of them.

Judgment affirmed ; Judges Bay and Dryden concur.